**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| A.P.C., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil Action No. 3:26-cv-00131 |
| | ) Judge Stephanie L. Haines |
| LEONARD ODDO, *et al.,* | ) |
| | ) |
| Respondents. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

A.P.C. ("Petitioner") is an immigration detainee who submitted a Petition for Writ of Habeas Corpus ("Petition") on January 30, 2026. ECF No. 1. In the Petition, Petitioner challenges the termination of his parole and his lengthy immigration detention and seeks an order requiring a bond hearing at which the Government bears the burden to demonstrate that he should remain detained. *Id.* at ¶ 168. For the reasons that follow, the Petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Ecuador. ECF No. 1-3, p. 1. After leaving Ecuador in September 2024, Petitioner traveled to Mexico, where he used the Government's CBP One smartphone application to schedule an appointment to present himself at a United States port of entry. ECF No. 1, ¶¶ 31-32. On November 10, 2024, he appeared at the Hidalgo, Texas port of entry, was processed as an arriving alien, and was paroled into the United States pending a hearing before an immigration judge on February 18, 2026. ECF No. 1-3, p. 1. The I-94 issued to Petitioner at the time of entry stated that his parole was valid through November 9, 2026. ECF No. 1, ¶ 33; ECF No. 1-4. A more recent I-94, however, shows that his parole ended on April 18, 2025. ECF

No. 1-8. On April 23, 2025, Petitioner filed a timely application for asylum, withholding of removal, and protection under the Convention Against Torture. ECF No. 1, ¶ 35.

On July 22, 2025, Petitioner was arrested by Amtrak police. *Id.*, at ¶¶ 39, 43. On the same day, he was transferred into Immigration and Customs Enforcement ("ICE") custody. ECF No. 1-6. Five days later, Petitioner was charged with public lewdness and exposure of a person. ECF No. 1, ¶ 61. On October 1, 2025, these charges were dismissed and sealed. *Id.* Petitioner was initially held at MDC Brooklyn, later transferred to Moshannon Valley Processing Center ("MVPC"), and is now held at Federal Correctional Institution, Lewisburg. ECF Nos. 1-2, ¶ 51; 1-6; 1-7; 37.

On January 30, 2026, Petitioner filed a Petition pursuant to 28 U.S.C. § 2241 and a Motion for Preliminary Injunction Seeking Bond Hearing, arguing that 8 U.S.C. § 1226(a), which authorizes release on bond after a hearing before an immigration judge ("IJ"), applied to his detention. *See generally* ECF Nos. 1, 7, 8. Respondents filed a response in opposition to the preliminary injunction request and Petitioner filed a reply. ECF Nos. 14, 15. On February 6, 2026, an IJ denied Petitioner's asylum application. ECF No. 8, p. 7. Petitioner appealed the denial and his appeal remains pending. ECF No. 26, p. 2.

On March 31, 2026, the Court issued an order granting the preliminary injunction motion to the extent it sought an individualized bond hearing and ordered Respondents to provide Petitioner with "the statutory process required under 8 U.S.C. § 1226, which includes a bond hearing," no later than April 10, 2026. ECF No. 17. On April 10, 2026, Respondents informed the Court that Petitioner was provided with an individualized bond hearing, wherein the IJ denied bond after finding Petitioner to be a flight risk. ECF No. 20. The IJ also addressed Petitioner's eligibility for bond as an arriving alien. ECF No. 20-1. That same day, Petitioner filed a Motion to Enforce March 31, 2026 Order, arguing that the IJ's "holding that Petitioner is ineligible for bond

violated this Court's PI Order, and the bond hearing was not fundamentally fair." ECF No. 21. Respondents filed an omnibus response opposing both the habeas petition and the motion to enforce, arguing that Petitioner failed to exhaust administrative remedies and failed to show that his bond hearing was fundamentally unfair. ECF No. 26. Petitioner filed an omnibus reply. ECF No. 29.

On June 2, 2026, the Court denied Petitioner's motion to enforce. ECF No. 31. The Court also directed the Clerk of Court to mark the case closed, and judgment was entered in favor of Respondents. ECF Nos. 31, 32. On June 22, 2026, Petitioner moved for reconsideration and/or to alter or amend the judgment under Rule 59(e), arguing that the Court had closed the case without adjudicating the Petition's remaining claims. ECF Nos. 34, 35. The Court granted that motion, reopened the case, and now addresses the remaining claims in the original petition. ECF No. 36.

## II.    DISCUSSION

Petitioner's remaining claims are narrow. He argues that his parole was unlawfully terminated and that his continued detention has become constitutionally unreasonable. For relief, he asks for a constitutionally adequate bond hearing at which the Government bears the burden to justify his continued detention. Respondents oppose and argue that the Court lacks jurisdiction to consider Petitioner's claims and that he has not exhausted his administrative remedies.

### A.  Jurisdiction

"The Supreme Court has held that § 2241 confers jurisdiction upon the federal district courts to consider cases challenging the detention of aliens during removal proceedings." *Bystron v. Hoover*, 456 F. Supp. 3d 635, 640 (M.D. Pa. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Thus, "a habeas petition under § 2241 is the proper vehicle for an inmate to challenge the fact or length of confinement, or the execution of his

confinement." *Id.* (internal quotation marks and citations omitted). Indeed, a district court "may issue a writ of habeas corpus when a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* (internal quotation marks omitted); 28 U.S.C. § 2241(c)(3).

### 1. Exhaustion of administrative remedies does not bar review.

Respondents argue that the Petition should be denied for failing to exhaust administrative remedies. Although Section 2241 does not include an express statutory exhaustion requirement, courts generally require immigration detainees to exhaust available administrative remedies before seeking habeas relief. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). That requirement, however, is prudential rather than jurisdictional and may be excused where exhaustion would be futile. *See Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Chajchic v. Rowley*, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July 25, 2017), *report and recommendation adopted*, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017).

Here, the Court will not deny the Petition on exhaustion grounds. Petitioner's remaining claims do not include the denial of asylum, his order of removal, or whether the IJ incorrectly weighed the evidence at his prior bond hearing. Rather, he argues his continued detention has become constitutionally unreasonable and was predicated on the termination of his parole without due process. He further argues that due process now requires a new hearing at which the Government bears the burden of justifying continued detention. That is a constitutional claim for habeas relief. Moreover, Petitioner was previously denied ordinary custody review because Respondents asserted that he was subject to mandatory detention under Section 1225(b), an interpretation that the Court rejected in this case, ECF No. 17, and that other courts have roundly

rejected in related cases. *See, e.g., Mirdjalilov v. Warden of Fed. Det. Ctr. Philadelphia*, No. 2:25-CV-7068, 2026 WL 184249, at *5 n.6 (E.D. Pa. Jan. 23, 2026) (collecting cases). Under these circumstances, the Court concludes that prudential exhaustion does not bar review.

### 2. Petitioner's parole termination remains relevant to the due process analysis.

As to Petitioner's parole allegations, the Government paroled Petitioner into the United States on November 10, 2024, and the I-94 issued at that time stated that parole was valid through November 9, 2026. ECF Nos. 1, ¶ 33; 1-3, p. 1; 1-4. Petitioner alleges that the Government later treated that parole as terminated effective April 18, 2025, without written notice and without any individualized determination that the purposes of parole had been served. ECF No. 1 ¶¶ 62, 95-99. Petitioner further alleges that he received no notice of that termination of his parole.[1] ECF No. 1-2, ¶ 38. Respondents do not identify a parole-termination notice or a parole-termination determination date in the present record.

The Court agrees with those courts that have recognized that the Government must comply with 8 U.S.C. § 1182(d)(5)(A)'s case-by-case requirement and 8 C.F.R. § 212.5(e)'s termination procedures. *See Nunez-Flores v. Soto*, No. 2:26-cv-02752-MEF, ECF No. 28 (D.N.J. June 5, 2026) (collecting cases); *see also Savane v. Francis*, 801 F. Supp. 3d 483, 494 (S.D.N.Y. 2025) (collecting cases). Here, the Court need not decide whether the alleged parole defect independently voids the termination of parole. Rather, the parole issue remains relevant for a narrower reason: it heightens the due process concern. Petitioner was at liberty pursuant to a parole document valid on its face through November 2026. The Government then treated that parole as terminated without producing notice or an individualized termination decision. Petitioner was later detained under a mandatory detention theory this Court has rejected. And the only bond hearing he received placed

---

[1] The implementing regulation requires, in cases other than automatic termination upon departure or expiration, written notice of parole termination. *See* 8 C.F.R. § 212.5(e)(2)(i).

the burden on him, while the IJ also questioned bond eligibility altogether. *See* ECF No. 20-1, p. 1.

Due process does not permit that sequence to result in prolonged detention without the Government ever bearing the burden before a neutral decisionmaker. Because the prior parole grant and subsequent termination are part of the process that led to Petitioner's present confinement, the Court finds that continued detention now requires review under *German Santos*.

**B. Petitioner is entitled to a new bond hearing due to prolonged detention.**

It is undisputed that Petitioner received a bond hearing under Section 1226(a) on April 9, 2026, and that bond was denied because Petitioner failed to establish that he was not a flight risk. ECF No. 20. Petitioner has now been detained for more than eleven months. Thus, while Petitioner's detention may have been permissible when bond was initially denied, the question now is whether continued detention without the Government ever bearing the burden to justify detention has become constitutionally unreasonable.

This Court has previously concluded that Third Circuit precedent does not categorically foreclose a second bond hearing in prolonged detention cases. *Fadel v. Warden*, No. 3:26-cv-00625, 2026 WL 1649907, at *2-3 (W.D. Pa. June 8, 2026). In *Fadel*, the Court applied the *German Santos* factors[2] and concluded that continued detention had become unreasonable, requiring a second bond hearing at which the Government would bear the burden. *Id.* at *2-5. Here, the Court finds the *German Santos* framework useful because Petitioner's detention has become lengthy and, in practical effect, resembles mandatory detention despite the nominal availability of

---

[2] Although *German Santos* involved detention under Section 1226(c), other courts have applied its due process analysis in other prolonged detention contexts. *See, e.g.*, *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (collecting cases applying *German Santos* to prolonged detention under Section 1225(b)); *A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136, at *2-3 (D.N.J. Mar. 3, 2026) (applying *German Santos* where petitioner had previously received a Section 1226(a) bond hearing).

Section 1226(a) custody review.

Accordingly, the Court will apply the *German Santos* factors to determine whether Petitioner's continued detention has become unreasonable. That inquiry is "highly fact-specific . . . ." *German Santos*, 965 F.3d at 210. The relevant factors include: (1) the duration of detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of confinement. *Id.* at 211. The Court addresses each factor in turn.

**1. Duration**

The first and "most important" factor is the duration of detention. *Id.* Although the Third Circuit declined to adopt a bright-line rule for when immigration detention becomes unreasonable, six months has repeatedly served as a meaningful benchmark in immigration detention cases. In *Demore v. Kim*, the Supreme Court upheld detention of approximately six months as only "somewhat longer than average." 538 U.S. 510, 530-31 (2003). And in *Zadvydas v. Davis*, although addressing detention under Section 1231 after a final order of removal, the Supreme Court treated six months as the period presumptively reasonable before continued detention required further justification. 533 U.S. 678, 701 (2001). The Third Circuit has also recognized that detention lasting between six months and one year may become constitutionally suspect. *See Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. Apr. 9, 2015). While these cases do not establish a fixed six-month rule here, they confirm that Petitioner's approximately one-year detention is sufficiently lengthy to weigh in favor of relief.

Here, Petitioner has been detained since July 22, 2025—more than eleven months as of the date of this writing. Respondents emphasize that Petitioner received a bond hearing. While true, it does not resolve the present claim. The April 2026 bond hearing was an ordinary Section 1226(a) hearing at which Petitioner bore the burden. Petitioner has never received a hearing at which the

Government had to prove that continued detention is necessary. The Court finds the duration of Petitioner's detention is substantial and weighs strongly in favor of granting relief.

### 2. Likelihood of continued duration

The second factor is whether the detention is likely to continue. *German Santos*, 965 F.3d at 211. When removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id.* This factor also favors Petitioner because his removal proceedings have not ended. The immigration court denied relief, and Petitioner appealed. As of the Rule 59(e) briefing, that appeal remained pending and resolution may take additional months. If Petitioner's appeal is remanded, proceedings may continue still longer. The relevant point for this factor is not whether Petitioner will ultimately prevail but rather that there is no imminent end date to detention. Continued detention is therefore likely to last for an additional, indeterminate period.

### 3. Reasons for delay

The third factor concerns the reasons for delay, including whether either party has caused unnecessary delay through continuances, careless errors, or bad-faith conduct. *German Santos*, 965 F.3d at 211. Courts should not hold a detainee's good-faith pursuit of immigration relief against him, even if his applications or appeals prolong the proceedings, because doing so would effectively punish him for pursuing available legal remedies. *Id.* At the same time, Government delay does not require a finding of bad faith to become relevant because detention may become unreasonable even where the Government has handled the proceedings reasonably. *Id.*

Here, this factor favors Petitioner. Petitioner is not responsible for the current delay. The record does not show that Petitioner has delayed these proceedings in bad faith. He filed an asylum application, litigated his claim for relief, and appealed the immigration court's denial. Those are

8

lawful steps in the removal process. The Court will not penalize Petitioner for pursuing available legal remedies. Nor have Respondents identified any conduct by Petitioner that has unnecessarily delayed the proceedings. Although the delay appears attributable to the ordinary course of removal and appellate proceedings, even reasonable litigation can result in detention that becomes unreasonable with time.

### 4. Conditions of confinement

The fourth factor is whether the conditions of confinement are meaningfully different from criminal punishment. *German Santos*, 965 F.3d at 211. Because removal proceedings are civil not criminal, "if [a noncitizen's] civil detention . . . looks penal, that tilts the scales toward finding the detention unreasonable. And as the length of detention grows, so does the weight [given to] this factor." *Id.* (citation omitted). At the time the Petition was filed, Petitioner was detained at MVPC. The Petition alleges jail-like and punitive conditions, including restrictions on liberty, limitations on movement, and difficulty obtaining adequate medical care. ECF Nos. 1, ¶¶ 112-17; 1-2, ¶¶ 49-50. And, as with any civil immigration detention, Petitioner is not free to leave. On June 30, 2026, Petitioner was transferred to Federal Correctional Institution, Lewisburg. ECF No. 37. Given the length of his detention and the fact that Petitioner is now detained at a correctional institution along with criminal detainees, this factor weighs strongly in favor of granting relief.

### 5. Balance of factors

Considering the *German Santos* factors together, the Court concludes that Petitioner's continued detention has become constitutionally unreasonable. Petitioner has been detained for more than eleven months. He has appealed the IJ's denial of asylum and there is no clear timeline for resolution. The present delay is not attributable to Petitioner. And Petitioner is now confined at Federal Correctional Institution, Lewisburg under conditions identical to penal detention.

The Court does not hold that every Section 1226(a) detainee who previously received a bond hearing is automatically entitled to a second hearing once detention reaches a particular length. Nor does the Court review the discretionary merits of the IJ's prior bond denial. Rather, under the specific circumstances presented here, continued detention without any hearing at which the Government bears the burden of justifying detention violates the Due Process Clause. Petitioner is therefore entitled to a new bond hearing at which the Government must prove, by clear and convincing evidence, that continued detention is necessary because Petitioner poses a danger to the community or a risk of flight.

## III.    CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

## ORDER

**AND NOW**, this 10th day of July, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED** to the extent it seeks a second individualized bond hearing before an immigration judge.

2. Respondents shall provide Petitioner with a second individualized bond hearing before an immigration judge. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary because Petitioner poses a danger to the community or a risk of flight or both.

3. The bond hearing shall include an individualized determination of whether continued detention remains justified. The immigration judge shall state the reasons for the custody determination orally on the record or in writing. If bond is denied, the immigration judge

10

shall identify the principal facts and evidence relied upon in determining that Petitioner poses a danger to the community, a flight risk, or both. Nothing in this Order requires the immigration judge to reach any particular custody determination.

4. The Government shall arrange for an individualized bond hearing to be conducted by an immigration judge by <u>Monday, July 20, 2026</u>.

5. If Petitioner is not provided with a bond hearing by <u>Monday, July 20, 2026</u>, or if the immigration judge declines jurisdiction or denies eligibility for a bond hearing based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), or the statutory interpretation of Section 1225(b)(2) that this Court has rejected, Respondents shall immediately release Petitioner from custody.

6. If Petitioner is granted bond and the Government appeals the immigration judge's decision, then, upon notification to this Court, the writ shall issue and Petitioner shall be automatically released from custody.

7. The Government shall provide notice to the Court of the outcome of the individualized bond hearing including any written custody decision or bond order issued by the immigration judge within seven days of the date of the immigration judge's decision.

8. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines<br>
United States District Judge